UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PERRY A. DAVIS,

        Plaintiff,                       Case No. 1:07-cv-156

v.                                          Honorable Gordon J. Quist

DENNIS STRAUB et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff has paid the $350.00 filing fee. On March 26, 2007, this Court ordered service of Plaintiff's complaint on Defendants Dennis Straub, Patricia Caruso, Paul Renico, Steven Rivard, Darlene George, and Laura McCormick. On June 8, 2007, Defendants Straub, Caruso, Rivard, George and McCormick filed a motion for summary judgment (docket # 7) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed a response (docket # 11) on July 6, 2007. Upon review, I recommend that Defendants' motion for summary judgment based on Plaintiff's failure to exhaust his available administrative remedies be denied.

## Applicable Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir.), *cert. denied*, 126 S. Ct. 650 (2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th

Cir.), *cert. denied*, 126 S. Ct. 338 (2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief of the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record

contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

**Facts**

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Saginaw Correctional Facility, though the actions he complains of occurred while he was housed at the St. Louis Correctional Facility (SLF). In his *pro se* complaint, he sues MDOC Director Patricia Caruso and Deputy Director Dennis Straub, together with the following SLF employees: Warden Paul Renico, Deputy Warden Steven Rivard, Resident Unit Manager Darlene George and Case Manager Laura McCormick.

According to the allegations of the complaint, during his time at SLF, Plaintiff was elected to the Warden's Forum by a vote of other prisoners in his housing unit. Plaintiff alleges that, during his tenure on the Warden's Forum, Defendant Renico repeatedly failed to address many safety and security issues, causing a rise in prisoner unrest. Ostensibly because he was concerned about the safety and security of the institution, on January 10, 2004, Plaintiff authored and mailed to Defendant Caruso a letter that was critical of Defendant Renico as warden of SLF. In his letter, Plaintiff charged that Warden Renico and certain corrections officers at SLF displayed an "authorized abusive attitude" and were "attempting to provoke an uprising or riot." On or about February 17, 2004, Caruso sent the letter to Defendant Renico for the purpose of having Plaintiff

removed from the Warden's Forum and barred from serving in such capacity at any institution. Upon receipt of the letter, Defendant McCormick issued a Notice of Intent to Conduct an Administrative Hearing ("NOI"). The purpose of the NOI was to determine whether Plaintiff should be removed from the Warden's Forum. (Compl., Ex. B.) An administrative hearing was held by Defendant Rivard on February 20, 2004. Following the hearing, Plaintiff was removed from the forum on the grounds that the statements made by Plaintiff constituted a serious threat to the custody, security or good order of the institution, pursuant to MICH. DEP'T OF CORR., Policy Directive 04.01.150. The administrative hearing report stated as its reason for the findings that Plaintiff's letter was inflammatory, consisted of his own opinions that the warden's conduct was likely to incite a riot, and was shared with other prisoners when Plaintiff attempted to solicit prisoner statements to the effect that officers were corrupt. The report recommended that Plaintiff be permanently removed from any position on a Warden's Forum, a recommendation that required the approval of the CFA Deputy Director. (Compl., Ex. C.) Defendant Straub approved the permanent removal in a letter dated May 17, 2004. (Compl., Ex. E.)

Plaintiff filed a grievance on February 24, 2004, in which he alleged that Renico had him removed from the Warden's Forum in retaliation for the exercise of his First Amendment rights to petition Caruso, in violation of both the Constitution and prison policy. (Compl., Ex. D.) The grievance also included the names of Defendants Caruso, Straub and Rivard, though Plaintiff alleges no improper conduct by those Defendants. Defendant George denied the grievance, concluding that Plaintiff had not been removed from his position in retaliation for the exercise of his rights, but because the investigation into the NOI revealed that the inflammatory letter and Plaintiff's attempts to solicit false statements from prisoners constituted a serious threat to the security and good order

of the facility.  (Compl., Ex. D at 2.)  Plaintiff appealed the grievance denial to Step II, which was denied on April 22, 2004 by MDOC Regional Prison Administrator Ray M. Wolfe.  Plaintiff appealed to Step III, and his grievance again was denied by Jim Armstrong on August 19, 2004.

Plaintiff filed a civil rights action in this Court on March 28, 2006.  *See Davis v. Caruso et al.*, No. 1:06-cv-228 (W.D. Mich.).  The action was dismissed on initial screening for lack of exhaustion against Defendants Caruso, Straub, Rivard, George and McCormick under then-applicable Sixth Circuit precedent.  *See id.* (docket ##4-5, Op. & J. 5/12/2006).

Plaintiff filed a new grievance on May 18, 2006, naming all of the Defendants.  The grievance was rejected at Step I as untimely.  Plaintiff appealed the rejection to Step II.  At Step II, Warden Blaine Lafler sought an extension of time for investigation and, on October 26, 2006, denied the grievance.  Although Warden Lafler recognized that the grievance had been rejected at Step I as untimely, he reviewed the grievance on its merits.  Plaintiff appealed to Step III.  Jim Armstrong reviewed the grievance and denied it on the merits.

Plaintiff filed the instant complaint in this Court on or about February 13, 2007.

**Discussion**

Defendants Straub, Caruso, Rivard, George and McCormick claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies.  Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532

U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

    I.  MDOC Policy

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[1], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

---

[1] The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III. *Id.* at ¶ S. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

      II.    <u>Analysis</u>

          A.    Grievance No. SLF 04-03-006652-07a

Defendants assert that Plaintiff's first grievance, No. SLF 04-03-006652-07a, was inadequate to exhaust his claims against Defendants Straub, Caruso, Rivard, George and McCormick because, although the grievance mentions Defendants Caruso, Straub and Rivard, it complains only

of the conduct of Defendant Renico. They assert, therefore, that the grievance fails to comply with the requirement of the applicable MDOC policy, which requires that the grievance name all those being grieved. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶T (effective Dec. 19, 2003).

I agree. The grievance does not name Defendants George or McCormick at all. While the grievance mentions Defendants Caruso, Straub and Rivard, it does not indicate that they are "involved in the issue being grieved," as required by the policy. MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶T (effective Dec. 19, 2003). As the Court previously held in *Davis v. Caruso*, No. 1:06-cv-228 (W.D. Mich.) (Op. & J. May 12, 2006) (docket ##4-5), the grievance fails to exhaust Plaintiff's administrative remedies against Defendants Straub, Caruso, Rivard, George and McCormick. The grievance, however, is sufficient to exhaust remedies against Defendant Renico.

B.      Grievance No. SLF-06-07-1289-28e

Defendants argue that Grievance No. SLF-06-07-1289-28e, although it grieves all Defendants, was rejected as untimely and therefore is insufficient to exhaust administrative remedies under the reasoning of *Woodford*, 126 S. Ct. at 2386, and *Jones*, 127 S. Ct. at 922-23. In support of their contention, they attach a copy of the Step I grievance response, which rejected the May 18, 2006 grievance as untimely under PD 03.02.130.

Defendants fail to meet their burden of demonstrating that Plaintiff failed to exhaust his administrative remedies. They attach only the Step I grievance response and fail to attach the responses to Plaintiff's appeals of the grievance. Plaintiff, however, has attached all responses to the complaint. Although the grievance was rejected at Step I as untimely under MDOC Policy Directive 03.02.130, it was considered on its merits at both Step II and Step III.

In determining that the exhaustion requirement of the PRLA requires "proper exhaustion," the *Woodford* Court relied in substantial measure on the habeas corpus procedural default doctrine. The Court recognized that, in the context of habeas corpus review, "the sanction for failing to exhaust properly (preclusion of review in federal court) is given the separate name of procedural default, although the habeas doctrines of exhaustion and procedural default 'are similar in purpose and implicate similar concerns . . . .'" *Woodford*, 126 S. Ct. at 2387 (quoting *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 7 (1992)). The Court therefore adopted the same sanction for failure to exhaust in the prisoner civil rights context as in the habeas context. *Id.*

Under habeas review, to determine whether a petitioner procedurally defaulted a federal claim in state court, a court must consider whether (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004), *cert. denied*, 544 U.S. 928 (2005); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). By analogy, in the prisoner civil rights context, this Court must look to the last administrative appeal to determine whether procedural rule was enforced. Here, the Step III reviewer did not rely on the timeliness issue.

As the *Woodford* Court noted:

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring

>proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

*Woodford,* 126 S. Ct. at 2385 (citation omitted). "[A]s a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." *Woodford,* 126 S. Ct. at 2385-386 (citing *L.A. Tucker Truck Lines, Inc.*, 344 U.S. at 37) (emphasis omitted). In the instant case, both the Step II and Step III respondents for the MDOC apparently found that Plaintiff properly exhausted his claim, even though his Step I grievance was not timely under Policy Directive 03.02.130, ¶¶ R, X, because they addressed his grievance on the merits. The MDOC must determine whether a prisoner satisfied the critical procedural rules under its policy directives, and, thus, when a procedural defect bars a grievance from being heard on the merits. When an administrative agency addresses an inmate's grievance and appeals on the merits, then the agency has found that the inmate satisfied the required critical procedural rules. *See Woodford,* 126 S. Ct. at 2385 (if the agency addresses a grievance on the merits, then the inmate has "us[ed] all steps that the agency holds out, and do[ne] so properly.").

Therefore, Defendants have not satisfied their burden, and Defendants' motion for summary judgment (docket #7) should be denied.

### Recommended Disposition

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (docket #7) be denied.

Dated:  February 11, 2008                    /s/ Hugh W. Brenneman, Jr.
                                             HUGH W. BRENNEMAN, JR.
                                             United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).