UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PERRY A. DAVIS,

        Plaintiff,

v.

DENNIS STRAUB, *et al.*,

        Defendants.

                            /

Case No. 1:07-cv-156

Hon. Gordon J. Quist

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff's action arises from incidents that occurred while he was housed at the St. Louis Correctional Facility (SLF). Plaintiff, through his counsel, has sued Michigan Department of Corrections (MDOC) Director Patricia Caruso and Deputy Director Dennis Straub, together with the following SLF employees: Warden Paul Renico, Deputy Warden Steven Rivard, Resident Unit Manager (RUM) Darlene George and Case Manager Laura McCormick. This matter is now before the court on defendants' motion for summary judgment (docket no. 17).[1]

    **I.**    **Plaintiff's claims**

---

[1] The Michigan Attorney General ("Attorney General") has advised the court that defendant George died on July 17, 2008. *See* Kristin Van Haften Aff. (docket no. 18-7). Nevertheless, the Attorney General seeks summary judgment on her behalf. The court will consider defendants' brief and Ms. Van Haften's affidavit, both of which were filed on August 6, 2009, as statements noting defendant George's death for purposes of Fed. R. Civ. P. 25(a)(1). Rule 25 allows the court to order the substitution of a proper party in the event that a party dies and the claim is not extinguished. However, if a motion for substitution is not made within 90 days after service of a statement noting the death, the action against the decedent must be dismissed. *See* Rule 25(a)(1). Pursuant to Rule 25, defendant George will be dismissed from this action absent the requisite motion for substitution. For the reasons stated below, even if a motion for substitution is granted, the court will recommend dismissal of the claims asserted against this deceased defendant.

According to the allegations of the complaint, during his time at SLF, plaintiff was elected to the Warden's Forum by a vote of other prisoners in his housing unit. Plaintiff alleges that, during his tenure on the Warden's Forum, Warden Renico repeatedly failed to address many safety and security issues, causing a rise in prisoner unrest. On January 10, 2004, plaintiff authored and mailed a letter to Director Caruso that was critical of Warden Renico. On or about February 17, 2004, Director Caruso sent the letter to Warden Renico to have plaintiff removed from the Warden's Forum and barred from serving in such capacity at any institution.

Upon receipt of the letter, defendant McCormick issued a Notice of Intent to Conduct an Administrative Hearing ("NOI"), to determine whether plaintiff should be removed from the Warden's Forum. Compl. Exh. B. Defendant Rivard held an administrative hearing on February 20, 2004, which resulted in plaintiff's removal from the Warden's Forum on the grounds that plaintiff's statements constituted a serious threat to the custody, security or good order of the institution, pursuant to MDOC Policy Directive (PD) 04.01.150. Defendant Rivard found plaintiff's letter to Director Caruso to be inflammatory and to consist of plaintiff's own opinions that the warden's conduct was likely to incite a riot. In addition, plaintiff shared this letter with other prisoners. The hearing report recommended that plaintiff be permanently removed from any position on a Warden's Forum. Deputy Director Straub approved the permanent removal on or about May 17, 2004. Plaintiff alleged that defendants' removal of him from the Warden's Forum was a retaliatory act in violation of his First Amendment rights and seeks monetary damages and reinstatement on the Warden's Forum.

## II. Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

3

could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**III.    Discussion**

**A.    Elements of a retaliation claim**

To prove a First Amendment retaliation claim, plaintiff must establish three elements: "1) the plaintiff engaged in activities protected by the Constitution or statute; 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

**B.    Plaintiff did not engage in activities protected by the Constitution or statute**

Plaintiff's alleged protected activity is his "freedom of speech which includes the right to author and send a letter to the Director of the MDOC (Director Caruso)." Compl. at ¶ 35. Plaintiff's letter to Director Caruso commences with allegations against Warden Renico:

> Mrs. Caruso, I am coming to You today, because it is my serious and grave fear that this guy Warden Paul Renico, and certain members of his staff (Especially a certain few Corr./Off.) appear to be seriously attempting to provoke an up rising or a riot here at the SLF facility . . . .
>
> This Renico; individual, is without question the weakest/worst Warden/ Administrator I have ever been housed under the jurisdiction or authority of in my entire criminal career. And that is a Fact Madam Director. I never really liked, or got along with Greg McQuiggin, and you know that, but he also had the Spin[e], to stand by his word, Right, or Wrong! Something I have learned very quickly Mr. Renico has not, and most likely NEVER will be able to do. He lets these officers dictate SLF policy and procedure he does not have the spin[e], or the ability to stand up to staff.

4

Caruso Letter (Jan. 12, 2004) (emphasis in original) (docket no. 18-3).

Plaintiff's letter complained that Warden Renico told the Warden's Forum members to tell the prisoners that certain orders of hobby craft items would be allowed, but later rejected those orders. *Id.* Plaintiff advised Director Caruso that the "Hobby Craft Scam" could "cause and create a disturbance, or up rising [sic]" among the prisoners. *Id.* Plaintiff goes on:

> Director, Please; Help save this Facility, before Renico, and some selected staff of his are able to achieve their goal of pushing and pushing. And lieing to these prisoners is an attempt to exploit some of these men into acting out, against the abusive attitude. Another perfect example of the Renico, Authorized abusive attitude here at SLF; is that Renico knowingly allows staff to work the same shift; the same assignments as FAMILY members; When staff are found to be abusive he returns them to the exact same spot where they were found to be abusive at.

*Id.* (Emphasis in original.) Plaintiff suggests that Warden Renico's staff does not respect the warden because "these Officers know the Warden WILL NOT STAND UP TO THEM," they set their own lunch hours and "DO NOT even wear MDOC C/O Uniforms here at SLF." *Id.*

Plaintiff concludes his letter by lecturing and berating the MDOC Director and her staff:

> Director Caruso, I know, similar to Dan Bolden, You probably have a dozen [secretaries] screening Your mail. But You will NOT be able to declare DENY ABILITY even if they are Not smart enough to bring something this important your [sic] your attention.
>
> I do sincerely hope that You will read this letter, and at the very least speak to Warden Paul Renico, before he allows his attitude, and his officers to blow this place up in your face. I have done my very best to appraise you of the [danger] of the situation.

*Id.* (Emphasis in original.)

On February 17, 2004, Deputy Warden Rivard acted as a hearing officer on plaintiff's removal from his position as a unit representative for the Warden's Forum. *See* Administrative

Hearing Report (hearing report) (docket no. 18-2). By way of background, PD 04.01.150 ¶ B sets forth the responsibilities of the unit representative:

> The role of prisoner housing unit representatives is to assist housing unit staff in identifying and resolving problems which exist in the unit. Housing unit representatives serve solely in an advisory capacity to the administration and shall in no way jeopardize the custody, security or good order of the institution. A housing unit representative who abuses his/her position by creating a serious threat to the custody, security or good order of the institution may be removed and/or permanently prohibited from serving as a housing unit representative as set forth in Paragraph I.

PD 04.01.150 ¶ I provides a procedure through which the prison administration may remove a house unit representative from the Warden's Forum. For example, "[a] housing unit representative who is found guilty of major misconduct or designated as a Security Threat Group member shall be removed immediately as housing unit representative by the Warden or designee." PD 04.01.150 ¶ I. In addition, a Warden may remove representative from the Warden's Forum if the prisoner poses a security threat to the facility:

> The Warden also may remove a prisoner who engages in conduct which otherwise jeopardizes the custody, security or good order of the facility. A prisoner shall be permanently prohibited from being a housing unit representative only with prior written approval of the CFA Deputy Director or designee. The Warden shall ensure that a prisoner removed or permanently prohibited from being a housing unit representative pursuant to this paragraph is notified in writing of that decision, including the reason for the decision. A prisoner who disagrees with the decision may file a grievance directly to Step III, in accordance with PD 03.02.130 "Prisoner/Parolee Grievances."

*Id.*

Here, the Warden removed plaintiff because he posed a security threat. In the hearing report, Deputy Warden Rivard found that plaintiff violated his responsibilities as a housing unit representative:

> Per P.D. 04.01.150 Prisoner Representatives/Warden's Forum, paragraph "B," [t]he role of the prisoner representatives is to assist housing unit staff in identifying and resolving problems existing in the housing unit. Housing Unit Representatives serve solely in an advisory capacity to the administration and shall in no way jeopardize the custody, security or good order of the institution and may be removed and/or permanently prohibited from serving as a housing unit representative as set forth in the above mentioned policy directive in paragraph "I." Paragraph "I" states, [t]he Warden also may remove a prisoner who engages in conduct which otherwise jeopardizes the custody, security or good order of the facility. Based upon the information obtained in the letter sent by Prisoner Davis to the Director, the information obtained by questioning various prisoners regarding the incident, and after formally interviewing Prisoner Davis, **I find him to be a very serious threat to the good order and safety of the facility. Prisoner is to be removed immediately from his duties and responsibilities as a unit representative. It is also recommended that prisoner Davis is permanently prohibited from being a housing unit representative. This permanent removal will need written approval [from the] CFA Deputy Director**.

*Id.* (Emphasis in original.)

> Deputy Warden Rivard set forth the following reasons in support of his findings:
>
> Prisoner Davis in his role as elected unit representative wrote a very inflammatory and [sic] letter to the Director of the Department of Corrections regarding the Warden and other unnamed staff members. The letter that prisoner Davis authored and sent involves allegations that the Warden would incite a riot and has no control over the staff at the facility. These statements are not based upon fact but are his personal opinions, views, and his past personal experiences while incarcerated. While prisoner claims the information was only shared with the Director['s] office[,] I found this to be contradictory to the truth. I interviewed several prisoners who were present when Prisoner Davis was attempting to solicit other prisoners in saying that officers are corrupt and set prisoners up under the Warden['s] direction. The reasons for removal are not for the Warden's personal reason. Prisoner Davis is being held accountable for his words.

*Id.* On May 17, 2004, CFA Deputy Director Straub reviewed the material regarding plaintiff's actions while serving as a housing unit representative at SLF and sent Warden Renico his approval to have plaintiff permanently prohibited from serving as a representative. Straub Aff. at ¶ 9 (docket no. 18-2).

7

Based on these facts, plaintiff has not demonstrated that he participated in any protected activity that would serve as the basis for a First Amendment retaliation claim. *See Smith*, 250 F.3d at 1037; *Thaddeus-X*, 175 F.3d at 394. Since this case arose in prison, the court views plaintiff's First Amendment claim in the prison context. "[T]he constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). "In the First Amendment context, for instance, some rights are simply inconsistent with the status of a prisoner or with the legitimate penological objectives of the corrections system." *Id.* (internal quotation marks omitted). For example, in *Huff v. Mahon*, 312 Fed. Appx. 530 (4th Cir. 2009), the court affirmed a district court's determination that "[a]n inmate does not have a First Amendment right to direct disrespectful comments to a prison official, whether verbally or in writing, because the prison's legitimate penological interests in promoting order and discipline, and in controlling violence clearly necessitate the prohibition of such comments."

Nevertheless, an inmate retains an undisputed First Amendment right to file non-frivolous grievances against prison officials on his own behalf. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). This court has found that a letter to the warden may be equated as the filing of a grievance in limited circumstances. *See, e.g.*, *Wade-Bey v. Fluery*, No. 2:07-cv-117, 2008 WL 2714450 at *6 (W.D. Mich. July 8, 2008) ("[p]laintiff's alleged letter to the warden may be equated with the filing of a grievance, which is constitutionally-protected conduct for which a prisoner cannot be subjected to retaliation, provided, of course, that the grievance is not frivolous").

In this case, plaintiff's letter to the MDOC's Director cannot be viewed as the equivalent of filing a grievance with a warden or as an attempt to access the courts. Plaintiff's letter

8

to Director Caruso was riddled with threats and insolent language that could disrupt the operation of the facility. Specifically, plaintiff disparaged Warden Renico ("[t]his Renico; individual, is without question the weakest/worst Warden/ Administrator I have ever been housed under the jurisdiction or authority of in my entire criminal career"); disparaged other MDOC employees (i.e., Director Caruso's staff is "NOT smart enough" to bring relevant letters to her attention); included the threat of a prisoner uprising ("this guy Warden Paul Renico, and certain members of his staff . . . appear to be seriously attempting to provoke an up rising or a riot here at the SLF facility"); and attempted to intimidate the Director into responding to the matters raised in his letter ("You will NOT be able to declare DENY ABILITY").

Furthermore, Deputy Warden Rivard found that plaintiff's letter and related actions constituted a threat to the good order and safety of the correctional facility in violation of PD 04.01.150 ¶ B, which justified his removal pursuant to PD 04.01.150 ¶ I. Plaintiff cannot maintain a retaliation action arising from the violation of a prison regulation. "[I]f a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one." *Thaddeus-X*, 175 F.3d at 395. "A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" *Jackson v. Madery*, 158 Fed.Appx. 656, 662 (6th Cir. 2005), quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir.1994). As in *Jackson*, Deputy Warden Rivard's hearing report shows that there was evidence to support the violation of policy and rules. *See Jackson*, 158 Fed. Appx. at 662; docket nos. 18-2, 18-3.

C.    **Plaintiff suffered no adverse action**

Finally, even if plaintiff had engaged in protected conduct, his removal as a housing unit representative was not an "adverse action" for purposes of maintaining a retaliation claim. *See*

9

*Smith*, 250 F.3d at 1037; *Thaddeus-X*, 175 F.3d at 394. Because an MDOC inmate "has no liberty or property interest in his position as an inmate representative on the warden's forum," removal of the inmate from that position does not constitute an adverse action for purposes of a retaliation claim. *See Vandiver v. Martin*, 48 Fed. Appx. 517, 519-20 (6th Cir. 2002). *See generally, Cromer v. Dominguez*, 103 Fed. Appx. 570, 573 (6th Cir. 2004) (a prisoner has no liberty or property interest in his position as a unit representative on the Warden's Forum, and is not engaging in protected First Amendment activity when appearing as a representative). Accordingly, defendants are entitled to summary judgment on plaintiff's retaliation claim.[2]

### IV. Recommendation

I respectfully recommend that defendants' motion for summary judgment (docket no. 17) be **GRANTED** and that plaintiff's action be dismissed.

Dated: November 2, 2009  /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[2] Defendants also seek summary judgment on grounds of qualified immunity. Because plaintiff has failed to establish a federal constitutional violation, it is unnecessary for the court to address the issue of qualified immunity. *See Marvin v. City of Taylor*, 509 F.3d 234, 244 (6th Cir. 2007) ("If there is no constitutional violation, then the plaintiff's § 1983 claim fails as a matter of law and the defendant is therefore entitled to summary judgment and does not need qualified immunity.")