UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

PERRY A. DAVIS,

        Plaintiff,

v.                                                 Case No. 1:07-CV-156

DENNIS STRAUB, *et al.,*                   HON. GORDON J. QUIST

        Defendants.
_____/

## ORDER ADOPTING
## REPORT AND RECOMMENDATION

The Court has before it Plaintiff's objections to the report and recommendation issued November 2, 2009, in which the magistrate judge recommended that Defendants' motion for summary judgment be granted. Plaintiff alleges a First Amendment retaliation claim based upon his removal as a representative to the Warden's Forum while housed at the St. Louis Correctional Facility. Plaintiff alleges that he was removed in retaliation for writing and sending a letter to Defendant Director Caruso that was critical of Defendant Warden Renico. Defendant Caruso forwarded the letter to Defendant Renico, and following an administrative hearing, Plaintiff was permanently removed from the Warden's Forum on the grounds that he posed a serious threat to the good order and safety of the facility.

The magistrate judge recommended that Defendants' motion be granted upon two grounds. First, he concluded that Plaintiff did not engage in protected activity by sending the letter to Defendant Caruso. The magistrate judge reasoned that Plaintiff's letter was not akin to a grievance or an attempt to access the courts because it "was riddled with threats and insolent language that could disrupt the operation of the facility." (Report & Recommendation at 9.) The magistrate judge

also concluded that Plaintiff cannot establish the first step of a retaliation claim because Plaintiff was found to have violated a prison regulation – prohibiting Warden's Forum representatives from "jeopardiz[ing] the custody, security, or good order of the facility" – and is barred from maintaining a retaliation claim arising out of that violation. Second, the magistrate judge concluded that even if Plaintiff was engaged in protected conduct, Plaintiff did not suffer an adverse action because he did not have a liberty or property interest in his position as a representative on the Warden's Forum. (*Id.* at 10.)

After conducting a *de novo* review of the report and recommendation, the Court concludes that it should be adopted because, while Plaintiff can establish the first element of a retaliation claim, he cannot show that he suffered an "adverse action." Therefore, the Court will grant Defendants' motion for summary judgment.

Turning first to whether Plaintiff was engaged in protected conduct, the Court concludes that Plaintiff's letter to Defendant Caruso was an exercise of speech. As the Sixth Circuit has observed, "[t]he Supreme Court has made it clear that prison inmates retain all First Amendment rights not incompatible with their status as prisoners, 'or with the legitimate penological objectives of the corrections system.'" *Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009) (quoting *Pell v. Procunier*, 417 U.S. 817, 832, 94 S. Ct. 2800, 2809 (1974)). In his analysis, the magistrate judge seems to suggest that prisoners' exercise of their First Amendment rights is limited to filing grievances and accessing the courts. But courts have recognized that the exercise of such rights is not so circumscribed. For example, prisoners "retain, in a general sense, a right to criticize prison officials." *Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 864 (5th Cir. 2004). Prisoners may assert this right by sending letters to persons outside the prison system, *see Todaro v. Bowman*, 872 F.2d 43, 45, 49 (3d Cir. 1989) (prisoner's letters to the ACLU, county commissioners, and a congressman complaining of conditions of confinement were legitimate First

2

Amendment activity), including the press. *See Burnham v. Oswald*, 342 F. Supp. 830, 885 (W.D.N.Y. 1972). Similarly, a prisoner's oral and written complaints to a warden about the misconduct of the prisoner's job supervisor are protected speech under the First Amendment. *King v. Ditter*, 432 F. Supp. 2d 813, 818-19 (W.D. Wis. 2006). *See also Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989) ("Filling our a prison-mandated form and complaining about treatment by means of a private letter to the warden can be compatible with the acceptable behavior of a prisoner and thus may not adversely affect the discipline of the prison.").

The question, however, is whether Plaintiff's letter was inconsistent with his status as a prisoner. In analyzing whether the letter constituted protected activity that could serve as the basis for a First Amendment retaliation claim, the Court finds instructive the Eleventh Circuit's decision in *Smith v. Mosley*, 532 F.3d 1270 (11th Cir. 2008). In that case, the plaintiff prisoner wrote a lengthy letter to the assistant warden that was similar in many respects to Plaintiff's letter in this case. The plaintiff in *Smith* complained about the conditions of his confinement, specifically: (1) that he and other similarly situated prisoners with compromised immune systems had to wait outside in cold temperatures without adequate warm clothing; and (2) that his diet consisted of a high starch diet, even though the assistant warden knew the plaintiff was a diabetic. The letter also contained numerous false and insubordinate remarks, including, for example, a suggestion that the prison required the plaintiff and other prisoners to stand out in the cold so they would get sick and die, thereby fulfilling the prison's goal of reducing the prison population. *Id.* at 1272-73. After reviewing the letter, the assistant warden determined that it violated two administrative regulations prohibiting false statements and insubordination. The plaintiff was charged with violating the regulations and pled guilty to both charges during separate hearings. Following the imposition of discipline, the plaintiff filed suit asserting several claims, including a First Amendment retaliation claim.

On appeal, the Eleventh Circuit began its analysis of the retaliation claim by considering whether the plaintiff's letter was constitutionally protected speech. *Id.* at 1276. The court found that it was protected because the plaintiff's grievances regarding being forced to stand in the cold and his diet were protected speech. The court further determined, however, that whether the statements upon which the charges were based were entitled to First Amendment protection was "problematical," and turned on whether the regulations were constitutionally permissible limitations on the exercise of prisoners' speech. *Id.* at 1277. Finding both regulations "reasonably related to legitimate penological interests and therefore valid limitations on inmate speech," the court concluded that the plaintiff's false and insubordinate statements were prohibited by the regulations and thus not protected. *Id.* ("As the court in *Thaddeus-X [v. Blatter]* stated, if a prisoner violates a legitimate prison regulation, he is not engaged in protected conduct, and cannot proceed beyond step one." (internal quotations omitted)). Nonetheless, the court still recognized that the plaintiff could establish a retaliation claim by showing that the defendants retaliated against him for presenting the two grievances. *Id.* Ultimately, the plaintiff's claim failed at the third step, because he could not demonstrate a causal connection between the adverse action and his protected conduct (the grievances). *Id.* at 1278-79. While the court found whether the plaintiff's grievances were the motivating factor behind the defendants' actions to be "a close question," it concluded that a reasonable jury would have to find that the defendants would have taken disciplinary action even in the absence of the grievances:

> For us, the answer to that question is clear; Mosley and Jones would have proceeded as they did – to charge Smith with violations of Rules 41 and 57 – even if his letter had not contained what appeared to be legitimate grievances. Objective prison administrators standing in Mosely and Jones's shoes would assume that the gist of what Smith said in his letter, and the language he employed, which reeked of disrespect for the administrators' authority, would be noised about the prison's population and, if ignored, could seriously impede their ability to maintain order and thus achieve the institution's penological objectives.

*Id.* at 1279.

In the instant case, Plaintiff's letter contained language that, like the language in *Smith*, was disrespectful and insubordinate toward Defendant Renico, prison staff, and other MDOC employees. Such comments, in particular Plaintiff's allegations that Defendant Renico and certain members of his staff were attempting to incite a riot, provided ample basis for Defendants to conclude that Plaintiff violated PD 04.01.150 by jeopardizing the custody, security, or good order of the facility. Because such statements violated a legitimate prison regulation, they could not form the basis of a retaliation claim. *Thaddeus-X vv. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999). Even so, the Court also concludes that Plaintiff's letter contained at least two legitimate grievances. First, Plaintiff complains that Defendant Renico withdrew his approval of certain orders of hobby craft items, even though his prior approval was already communicated to the prisoners. Second, Plaintiff complains that Defendant Renico has no control over the prison staff and that staff members are permitted to dictate prison policy and mistreat prisoners. As in *Smith*, Plaintiff's letter contains grievances that constitute protected speech as well as language that is not protected and violative of prison regulations. Plaintiff has thus established the first step of a First Amendment retaliation claim.

Plaintiff's claim fails because his removal from the Warden's Forum did not constitute an adverse action. Plaintiff does not dispute that he has no liberty or property interest in his position as an inmate representative on the Warden's Forum. Plaintiff argues, however, that the magistrate judge erred by applying the wrong test for determining whether he suffered an adverse action because the test under *Thaddeus-X*, *supra*, is whether the action would have deterred a person of ordinary firmness from continuing to exercise his First Amendment rights. While Plaintiff identifies the correct test, he fails to show how his removal as a representative impaired his ability to exercise his First Amendment rights. Plaintiff's participation as a Warden's Forum representative was not First Amendment activity, *see Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004), and Plaintiff fails to show that such

5

removal impeded his ability to write and send letters regarding prison conditions to Defendant Caruso or anyone else.  *See Siggers-El v. Barlow*, 412 F. 3d 693, 702 (6th Cir. 2006) (holding that a transfer to another facility constituted an "adverse action" where the transfer resulted in the prisoner losing his high paying prison job that paid for his attorney fees and moved him away from his attorney).  Thus, Plaintiff cannot show adverse action.

Therefore,

**IT IS HEREBY ORDERED** that the Magistrate Judge's Report and Recommendation issued November 2, 2009 (docket no. 23) is **ADOPTED** as the Opinion of the Court.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (docket no. 17) is **GRANTED**, and this case is **dismissed**.

This case is **concluded**.


Dated:  December 11, 2009 	/s/ Gordon J. Quist
	GORDON J. QUIST
	UNITED STATES DISTRICT JUDGE